# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Lenders Recovery Service,<br>9558 Camino Ruiz, Suite B, San Diego, CA 92126 | Case No. **'22 MJ03633** |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the **Southern** District of **California**, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 15 U.S.C. 78j(b), 78ff; 17 C.F.R. 240.10b-5; 18 U.S.C. 1341, 1343, 1956, 1957 | Securities fraud<br>Mail and wire fraud<br>Money laundering |

The application is based on these facts:

See Affidavit of Special Agent Alexander E. Murray, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Alexander E. Murray*
Applicant's signature

Alexander E. Murray, Special Agent, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by **telephone** *(specify reliable electronic means)*.

*Daniel E. Butcher*
Judge's signature

Date: 10/04/2022

City and state: San Diego, CA

Hon. Daniel E. Butcher, U.S. Magistrate Judge
*Printed name and title*

# ATTACHMENT A

## Property To Be Searched

The property to be searched is all premises of Lenders Recovery Service located at 9558 Camino Ruiz, Suite B, San Diego, California 92126 ("**LRS**"), including but not limited to any and all structures, buildings, offices, storage facilities and containers (whether locked or unlocked, and whether secured or unsecured), safes (whether locked or unlocked, and whether secured or unsecured), filing cabinets or other storage systems (whether locked or unlocked, and whether secured or unsecured), parking lots, business spaces, curtilage, and any and all other premises and property of **LRS**.

# ATTACHMENT B

## Item To Be Seized

The item to be seized pursuant to the search of **LRS** as set forth in Attachment A is:

One Thinkpad laptop computer

(the "**Target Computer**"),

which is or contains evidence of, or constitutes fruits or instrumentalities of, violations of 15 U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. § 240.10b-5, and 18 U.S.C. §§ 1341, 1343, 1956, and 1957.

# AFFIDAVIT IN SUPPORT OF
# APPLICATION FOR SEARCH WARRANT

I, Alexander E. Murray, being duly sworn, hereby depose and state as follows:

## INTRODUCTION

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since March 3, 1996. I am assigned to the FBI San Diego Field Office, North County Resident Agency. Before becoming a Special Agent, I received a Bachelor's degree in Sociology from the University of Virginia in 1987. I also served for nearly seven years as a Warrant Officer in the U.S. Army. While working as a Special Agent, I have attended many types of training courses, beginning with a 16-week FBI new agents' class, during which I received instruction on various aspects of federal investigations. I have also received specialized training related to internet facilitated fraud, white-collar crimes, and other types of criminal violations.

2. In the more than twenty-five years that I have been a Special Agent, I have become experienced in investigations involving all types of economic crimes, including the methods and means employed by individuals who engage in these offenses. I have investigated numerous criminal offenses including wire fraud, mail fraud, and money laundering. I have also been involved in the execution of numerous federal search warrants. In addition to my personal investigative experience, I have consulted extensively with other experienced agents of the FBI, other federal agents and officers, and regulators who have expertise in investigations involving economic crimes.

3. I make this affidavit in support of a warrant to search the premises of Lenders Recovery Service, 9558 Camino Ruiz, Suite B, San Diego, California, 92126 ("**LRS**"), as set forth more fully in Attachment A, attached hereto and incorporated by reference herein; and to seize a Thinkpad laptop computer (the "**Target Computer**"), an item used in the commission of crimes and that I believe contains evidence, fruits, and instrumentalities, as set forth in Attachment B, incorporated by reference herein, which constitute evidence of violations of federal criminal law, namely, Title 15, United States Code, Sections 78j(b) and 78ff, 17 C.F.R. § 240.10b-5, (securities fraud), and Title 18, United States Code, Sections 1341 (mail fraud), 1343 (wire fraud), 1956 and 1957 (money laundering). The warrant I request here is simply to seize the **Target Computer**. A

further search warrant will be sought to search the computer and seize evidence of crimes which I believe are contained on it.

4. The facts set forth in this affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; interviews of victims; my review of documents and computer records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience. All dates, times, and amounts are approximate. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for search warrants, it does not set forth each and every fact that I or others have learned during the course of this investigation.

## STATEMENT OF PROBABLE CAUSE

### A. Overview of Fraudulent Scheme

5. The FBI has identified approximately 50 investors who invested funds with RAMIREZ and his business, JMJ Capital Group (JMJ), between 2018 and 2022. RAMIREZ founded, managed, and has controlled JMJ, which is a California-registered entity. Investigation and analysis of bank records has shown that these individuals invested with JMJ over $8 million in total. I believe, based on evidence collected through this investigation, that RAMIREZ secured these investments through a fraudulent scheme involving misrepresentations about his company and potential returns, as discussed in greater detail below. He gave back just over $3 million to investors, creating a net investment—a loss to investors—of over $5 million.

6. RAMIREZ's activities relating to his scheme have taken place primarily within the Southern District of California, including at golf resorts, and elsewhere, including the Eastern District of California and the District of Arizona, as investigation has shown. and earlier on—in 2018—in or around Fresno, in the Eastern District of California. Many of RAMIREZ's investors live within the Southern District of California, and RAMIREZ is believed to have resided and conducted his fraud within this District.

2

7. The FBI interviewed 10 people who invested with RAMIREZ and JMJ between 2018 and 2021. The FBI also has received and analyzed many bank records related to RAMIREZ and JMJ through subpoenas. Further, several investors have provided the FBI with documents relating to their investments, including emails, text messages, checks, and documents that were purported by RAMIREZ to be account statements or funding agreements. The investigation is ongoing.

8. Based on the interviews of investors thus far and other information from the investigation, RAMIREZ falsely and variously claimed to investors that JMJ purchased and resold personal protective equipment, factored accounts receivable, sold furniture to home-improvement retail companies, invested in check-cashing services, invested in a patio furniture company, and contracted with a cruise line to rebuild and refurbish air conditioning units on its ships (collectively, the "Business Opportunities"). RAMIREZ falsely promised investors returns on investment ("ROI") of approximately 10% to 14% in 90 days and 20% to 30% in one month, which returns were generated by the Business Opportunities. He also falsely claimed that investors that they could withdraw their money at any time.

9. RAMIREZ's scheme to obtain investments in JMJ was successful. He received from investors at least approximately $8 million and caused investors to lose at least approximately $5 million. He used investors' funds in a deceptive and misleading manner: instead of to support and advance JMJ's Business Opportunities, RAMIREZ used their money to pay for personal expenses, including luxury vehicles, travel, potential real estate transactions, and other expenses, and to make Ponzi-style payments to other investors to perpetuate his fraudulent scheme.

10. On September 30, 2022, a federal grand jury returned an indictment of RAMIREZ, charging him with one count of securities fraud, in violation of Title 15, United States Code, Sections 78j(b), 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5; two counts of money laundering, in violation of Title 18, United States Code, Section 1957; and criminal forfeiture allegations.

**B.     The Target Computer**

11. RAMIREZ was arrested in the late afternoon on September 30, 2022. Agents arrested him as he arrived at **LRS**. In September 2021, RAMIREZ purchased a new, 2021 Cadillac

3

Escalade, VIN 1GYS4EKL6MR442925 (the "Escalade") in Santa Clara, California, for $131,470.78, as records show. He paid $50,000 by cashier's check—fraudulently, through check kiting. His own account became overdrawn, and he deposited two checks into it which were drawn on a Chase account of Alexandria Counihan ("Counihan"), his fiancée or significant other, which subsequently bounced. RAMIREZ borrowed the remainder of the Escalade's cost from Ally Financial, as records also show. In 2022, he became behind on payments for this vehicle, and in locating RAMIREZ to arrest him, agents learned that the vehicle had been repossessed by **LRS** on or about September 28, 2022. Through further investigation, agents determined RAMIREZ was meeting with **LRS** representatives again on September 30, 2022, apparently to make a payment on the car and get it out of repossession. He was arrested as he arrived for that appointment at **LRS**.

12. The Escalade was at **LRS** for a short period after RAMIREZ's arrest and then was towed to a different location. However, before it was towed, **LRS** employees removed all items and personal property from the Escalade on or about September 29, 2022, and have kept them in secure storage at **LRS**. Specifically, **LRS** has advised agents that **LRS** removed a computer, among other things, from the Escalade and placed the computer within the secure manager's office at **LRS**. Agents have communicated with **LRS** as recently as October 3, 2022, and agents have been advised that **LRS** can release items removed from a vehicle, such as personal property, only to the owner of the items, or to law enforcement with a court-authorized search warrant. Based on the facts set forth herein, my knowledge of the investigation, and my training and experience, I believe the **Target Computer** was removed from the Escalade and currently is in **LRS**'s possession, custody, and control at this time. **LRS** has confirmed that it will permit agents to enter **LRS** and seize the **Target Computer** once agents have a warrant for this laptop.

13. After his arrest, RAMIREZ was advised of and waived his *Miranda* rights. In summary, he told agents he had obtained approximately $600,000 from investors in connection with JMJ and thought he owed them approximately $1 million, but claimed he would be repaying all of them through a new PPE-related deal he was working on. He claimed he was brokering a PPE transaction involving shipments from Asia worth $13 billion which was scheduled to close on October 3, 2022, and he would be making approximately $25 million from this deal. Based on his

statements, the facts set forth above, my training and experience, and my and other agents' knowledge of this investigation, I believe RAMIREZ was referring to a fictitious investment or business opportunity during his post-arrest statement, and he was continuing his fraudulent activities and misleading investment claims up to the time of his arrest.

14.     RAMIREZ had two phones in his possession at the time of his arrest. During his post-*Miranda* interview, RAMIREZ claimed these two phones as his. He consented to a review of WhatsApp correspondence on one of the phones, and interviewing agents reviewed some of the correspondence he claimed related to this new $13 billion PPE investment opportunity. Based on agents' review of these messages, and my knowledge of the investigation and RAMIREZ's fraud, and my training and experience, I believe that RAMIREZ's claims about this new PPE transaction and business opportunity were false.

15.     During his post-arrest statement, RAMIREZ did not mention to agents a laptop or other computer he used in connection with JMJ and the investments he solicited.

16.     After RAMIREZ was arrested, agents have conducted consensual, non-custodial interviews of Counihan. She was interviewed in person on September 30, 2022, at the Carlsbad-area hotel at which she and RAMIREZ had been staying recently, and by telephone on October 3, 2022. In summary, as relevant to the **Target Computer**, Counihan told agents RAMIREZ had two phones, which were with him at the time of arrest, and a Thinkpad laptop computer (the **Target Computer**), which was in the Escalade. Counihan said this laptop was RAMIREZ's and that she had used to teach him how to use Docusign. Counihan also disclosed the password for the computer and stated RAMIREZ saved documents relating to RAMIREZ's PPE business (as I and agents believe, his fraudulent PPE "business"), such as invoices, on the **Target Computer**. As noted above, I believe the **Target Computer** was removed from the Escalade by **LRS** and remains in secure storage at **LRS** at this time.

17.     During the course of his fraudulent scheme, RAMIREZ communicated with investors by electronic mail and sent investors documents that were generated on a computer. Indeed, as to email, on May 25, 2022, the Honorable Andrew G. Schopler, United States Magistrate Judge, authorized a search warrant for the Google-hosted email account RAMIREZ

5

frequently used to communicate with investors: rich@jmjcapitalgroup.com. The return became available from Google in late August 2022, and review remains ongoing. In addition, RAMIREZ sent investors purported "Funding Agreements" and "account statements" on numerous occasions. Investors have provided the FBI with documents including these from RAMIREZ, and based on the FBI's investigation, these investors received funding agreements and account statements via email from RAMIREZ. From my analysis of these documents, knowledge of the investigation, and training and experience, I believe these documents and others were generated on a computer, and I believe RAMIREZ sent them from a computer he was using during the course of his fraudulent scheme. Based on the FBI's review and analysis of JMJ and RAMIREZ's bank records, I also believe RAMIREZ conducted financial transactions with a computer and online banking. For at least these reasons, and based on the investigation and my training and experience, I believe RAMIREZ used the **Target Computer** in connection with his fraudulent scheme.

18. I request this warrant simply to be able to enter and search **LRS** and to seize the **Target Computer**. Agents will obtain further search warrants to search the **Target Computer**, and RAMIREZ's two phones mentioned above, for evidence relating to his crimes.

## GENUINE RISKS OF DESTRUCTION OF EVIDENCE

19. Based upon my experience and training, and the experience and training of other agents with whom I have communicated, electronically stored data can be permanently deleted or modified by users possessing basic computer skills. In this case, there is a genuine risk of destruction of evidence—not only if the subject receives advance warning of the execution of this warrant, but also because the **Target Computer** could be retrieved, based on **LRS**'s representations to agents, by Counihan and/or RAMIREZ. At his initial appearance, RAMIREZ was given bond in the amount of $75,000, secured by one financially responsible adult. While he remains in custody at this time, there is a genuine risk that evidence will be destroyed unless and until agents are able to seize the **Target Computer**.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

20. The government has not previously attempted to obtain the **Target Computer** by other means.

## CONCLUSION

21. Based on the foregoing, there is probable cause to believe that the **Target Computer** identified in Attachment B has been used in the commission of a crime, and contains or constitutes evidence, fruits, and instrumentalities of violations of Title 15, United States Code, Sections 78j(b) and 78ff, Title 17, Code of Federal Regulations, Section 240.10b-5, and Title 18, United States Code, Sections 1341, 1343, 1956, and 1957. I request a warrant to search **LRS**, as set forth in Attachment A, and to seize the **Target Computer**, as set forth in Attachment B.

*Alexander E. Murray*
Alexander E. Murray
Special Agent
Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1, by telephone, on October 4, 2022.

*Daniel E. Butcher*
Honorable Daniel E. Butcher
United States Magistrate Judge

7